UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JONATHAN LEE THOMAS,

     Plaintiff,

v.                                                                  Case No. 3:21cv1741-MCR-HTC

ESCAMBIA COUNTY JAIL,
ESCAMBIA COUNTY BOARD OF
     COUNTY COMMISSIONERS,
ESCAMBIA COUNTY SHERIFF'S OFFICE,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Jonathan Thomas' *pro se* amended complaint under 42 U.S.C. § 1983 alleging his constitutional rights were violated when he was placed in a cell at the Escambia County Jail (the "Jail") with an inmate who had COVID-19.  ECF Doc. 9.  The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  Upon consideration, the undersigned respectfully recommends this action be DISMISSED because, despite being given an opportunity to amend his complaint, Plaintiff has failed to state a claim upon which relief can be granted.

## I.    BACKGROUND

Plaintiff, a pre-trial detainee, currently incarcerated at the Jail, initially filed suit against the Escambia County Board of County Commissioners ("ECBCC"), Escambia County Sheriff's Office, and the Jail complaining of various conditions of his confinement.  ECF Doc. 1.  The undersigned screened the complaint and found it to be deficient for several reasons, including failing to meet the basic pleading requirements set forth in Federal Rule of Civil Procedure 8, failing to state a claim against the ECBCC, and naming defendants who were not subject to suit under § 1983.  ECF Doc. 8.

Nonetheless, because Plaintiff is proceeding *pro se,* the Court allowed Plaintiff an opportunity to amend the complaint to more carefully craft his complaint to state a cause of action.  The Court instructed Plaintiff that to state a claim against the ECBCC, he must allege facts sufficient to show (1) Plaintiff's constitutional rights were violated and (2) that a custom or policy of the ECBCC was the moving force behind Plaintiff's constitutional violation.  The Court also instructed Plaintiff that to succeed on a claim of deliberate indifference under the Fourteenth Amendment, Plaintiff must allege facts sufficient to show that an individual defendant knew Plaintiff suffered from a serious risk of harm and disregarded that risk by conduct that was more than negligence.

On or about January 7, 2022, Plaintiff filed an amended complaint. Despite making some changes to the complaint, such as omitting the Jail and the Sheriff as defendants, the amended complaint fares no better—Plaintiff still fails to state facts sufficient to allege a constitutional violation. For the reasons discussed below and because Plaintiff has already had one opportunity to amend the complaint, the undersigned finds an additional opportunity to be futile. Thus, the undersigned recommends this action be dismissed for failure to state a claim.

## II.    PLAINTIFF'S AMENDED COMPLAINT

In the amended complaint, Plaintiff keeps the ECBCC as a defendant and adds two additional defendants, William Powell, Director of Corrections at the Jail, and Allison Burgess, Adv. Reg. Nurse Practitioner. Plaintiff sues Defendant Powell and Nurse Burgess in their official and individual capacities. The following facts are taken from Plaintiff's amended complaint and are accepted as true for purposes of this report and recommendation.

Plaintiff alleges Defendants "by deliberate indifference and or disregard, refused to establish effective means, rules, and or guidelines of 'quarantine' promulgated by [Centers for Disease Control and Prevention ("CDC")] to ensure safety of inmates as well as employee's thus violating [his] constitutional right[s]." ECF Doc. 9 at 6-7. According to Plaintiff, "[o]n October 1, 2013, the ECBCC assumed responsibility of the 'Jail operations' previously operated under the

Escambia County Sheriff's Office." *Id.* at ¶1. "A responsibility that included (a) rules, polices, and procedures of the facility (b) to train and educate those whom they employ or act on their behalf (c) to enforce policies and establish a custom or practice that is settled and permanent that it takes on the force of law." *Id.*

"Therefore, because of the global pandemic of the deadly infectious disease at large 'COVID-19' the CDC issued on March 23, 2020 an 'Interim Guidance on Management of COVID-19' to 'Correctional and Detention Facilities' due to the highly contagious nature of COVID-19 and its rapid spread and the 'fact' that there is 'no known cure.'" *Id.* at ¶2. "The CDC guidelines applies to (a) incarcerated/detained persons, staff, volunteers, and visitors who enter correctional and detention facilities as well as incarcerated detained person who are transferred to another facility or released from custody, (b) 'education' for 'staff' and 'incarcerated detained persons' (c) guidelines on personal hygiene, cleaning supplies, sanitation, and precautions (d) guidelines and rules of quarantine to ensure the safety of those who are not "laboratory." *Id.* at ¶2.

The Defendants "were well aware of the global pandemic COVID-19 and its highly contagious nature by (a) public awareness, (b) the CDC, (c) pandemic response requirements, but by deliberate indifference and or disregard, refused to establish effective means, rules, and or guidelines of 'quarantine' promulgated by CDC to ensure safety of inmates as well as employee's thus violating the

constitutional right of due process violation of Fifth, Eight, and Fourteenth Amendment concerning (1) detention standards, (2) right to reasonable safety, (3) state created danger." ECF Doc. 9 at ¶3.

"Therefore, because of Defendants deliberate indifference and/or disregard of guidelines established by the CDC concerning COVID-19 and prevention, regarding rules of 'quarantine' and safety of those 'not laboratory confirmed positive,' "[Plaintiff] was placed in medical infirmary of Jail September 7, 2021 for 'head trauma' and was placed in cell with an inmate by the name of Mr. John Tubb who was in quarantine for a 'laboratory confirmed case of COVID-19,' which put [Plaintiff] in a[n] imminent risk of contracting the deadly contagious infectious COVID-19, a disease in which there is 'no cure.'" *Id*. at ¶4. "[Plaintiff] immediately informed staff, and medical personnel of what happened and asked why, and how, and was simply ignored and "forced to stay" in a peril condition "a due process violation of the 14th amendment and 8th amendment because of defendants' failure by deliberate indifference and or disregard to establish policies and or rules of quarantine practice that is settled and permanent, that it takes on the force of law." *Id*.

"Even after [Plaintiff] informed staff and medical personnel they refused to (a) act on what had happened, (b) knew I was in a 'urgent medical need,' but by deliberate disregard knowing the damages of COVID-19 and its deadly effects, left

[Plaintiff] in the cell with a laboratory confirmed case of COVID-19 despite (c) an act that far exceeds negligence and evidences a reckless state of mind, violating my 5th, 8th, and 14th, amendment rights by (d) subjective knowledge of a risk of serious harm, (e) disregard of that risk (f) but conduct that is more than 'negligence' a violation of due process clause of the 5th, 8th, and 14th amendment by imposing punishment that shock the conscience, involve unnecessary and wanton infliction of pain, offend evolving notions of decency, or are grossly disproportionate to the offense for which they are imposed." *Id*.

Plaintiff alleges that he was "forced to be confined with Mr. John Tubbs for about two (2) days or so, a laboratory confirmed positive COVID-19, even though leaving [Plaintiff] in imminent risk of contracting the deadly contagious infectious disease COVID-19, even though leaving him in imminent risk of contracting the deadly contagious disease COVID-19, by deliberate indifference and a disregard to (a) CDC guidelines (b) PRR regulations, (c) public awareness, not being allowed to (d) protect myself with a mask, (e) nor was [Plaintiff] given daily temperature checks or monitored by respiratory infection, promulgated by CDC prevention and guidelines, (f) nor was [Plaintiff] given personal hygiene care products as handsoap, (g) nor . . . given cleaning supplies ever to sanitize the cell, (h) which greatly increased the risk of catching the deadly infectious contagious virus COVID-19." ECF Doc. 9 at ¶5.

"Finally, on or about [September 9, 2021], Mr, John Tubbs and [Plaintiff] were separated and placed in negative pressure cells, use[d] for or to treat those with 'respiratory infections' Mr. Tubbs in one cell and [Plaintiff] was placed in another." *Id*. at ¶6.

"On or about [September 9th], [Plaintiff] made contact with a Nurse Stephanie, and Nurse Riley and mentioned to them the concerns [Plaintiff] had of [his] health, and how and why did this happen? There (sic) response was 'I don't know how it happened or who put you in with him, but it wasn't me but unfortunately, you have been exposed to COVID-19, now your (sic) in quarantine.'" *Id*. at ¶7.

"After being separated from Mr. John Tubbs[,] a laboratory confirmed positive Inmate for COVID-19[,] for about three (3) days or so, on or about September 12, 2021[,] Mr. John Tubbs was put again in the cell with me, after [Plaintiff] rejected and they knew he was laboratory confirmed positive for COVID-19 put [Plaintiff] in imminent risk of bodily injury of contracting COVID-19 a deadly contagious infectious disease by deliberate indifference and/or disregard to CDC guidelines, and concern for my safety and health a violation of my 5th, 8th, and 14th amendment rights, putting me again in a peril condition and state of mind." *Id*. at ¶8. "These acts amount to deliberate indifference because it demonstrates a blameworthy disregard of the risks posed by COVID-19 by exponentially increasing the risk of spreading the virus to others without disregard to (a) CDC guidelines (b)

Pandemic Response Requirements ("PRR") (c) and public awareness (d) conduct that far exceeds negligence and evidences a reckless state of mind." *Id*.

"Furthermore[,] on or about [September 13, 2021], [Defendant Burgess], came to see [Plaintiff] informing [him that he] was going back to population!" ECF Doc. 9 at ¶9. "[Plaintiff] informed [her] was weak, off balance, and not feeling well at all." *Id*. "[Plaintiff] asked for COVID test and also was denied, even though [Plaintiff] wasn't feeling well, her response was 'no I'm signing you out, your(sic) going back to population." *Id*. "A decision that violated my 5th, 8th, and 14th amendment rights as well as staff and inmates, [Plaintiff] would come in contact with[;] her deliberate disregard of safety for others, by deliberate indifference to (a) CDC guidelines to exposure and spread prevention of COVID-19, (b) her medical education and or background training that dealt with deadly contagious infectious disease (c) as well as CDC guideline requirements of '14 days of quarantine' of those who are laboratory confirmed positive, and or those who have been 'exposed' to those who are laboratory confirmed positive, by deliberate indifference and disregard, she deliberately broke protocol and released me back into population after only 'six days of quarantine,' an act that far exceeds negligence and evidence a reckless state of mind, and disregard of safety and health of others, a violation of due process of 5th, 8th, and 14th amendment. An inexcusable act." *Id*.

"With all this in mind [Defendant Powell] who is ultimately responsible for the administration of the jail, have not implemented guidelines promulgated by the CDC in this facility that will protect the health and constitutional rights of 'all' who enter this facility staff, visitors, and inmates alike, which therefore equals deliberate indifference on part of 'all defendants' and therefore violates the cruel and unusual punishment clause of the 8th amendment, and the due process clause of section I of the 14th amendment, as well as its equal protection clause, and due process of the 5th amendment, with refusal to comply to CDC guidelines by deliberate indifference by acts of disregard that are still extant to the day, that far exceeds negligence and evidences a reckless state of mind." *Id*. at ¶10.

As relief, Plaintiff requests an apology; $2,500,000 for bodily injury exposure to COVID-19; and $2,500,000 for second bodily injury exposure, "for a total of $5,00,000." *Id*. at 12.

## III.    LEGAL STANDARD

Because Plaintiff is a pre-trial detainee seeking relief against a governmental entity and governmental employees, proceeding *pro se* and *in forma pauperis*, the Court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §§ 1915(e)(2); 1915A(b).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, plaintiffs must go beyond merely pleading the sheer possibility of unlawful activity by a defendant; plaintiffs must offer factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Additionally, because Plaintiff is proceeding *pro se*, the undersigned will liberally construe his allegations. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## IV.   ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a violation of federal law or the Constitution; and (2) that the alleged violation was committed by a person acting under the color of state law. *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (per curiam). Although Plaintiff complained of a host of conditions at the Jail in his initial complaint, as set forth above, the crux of Plaintiff's amended complaint is about the Jail's COVID-19 protocols (or lack thereof). As the Court previously stated, Plaintiff's deliberate indifference conditions of confinement

claims fall under the Fourteenth Amendment (not the Eighth[1] or the Fifth[2]
Amendments).    Regardless, the standard under the Eighth Amendment and
Fourteenth Amendment are the same.  *See Dang ex rel. Dang v. Sheriff, Seminole
Cty. Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017).

To establish a deliberate-indifference claim, a plaintiff must set forth facts
sufficient to meet both an objective and a subjective standard.  *Farmer v. Brennan*,
511 U.S. 825, 834 (1994).    Under the objective component, the plaintiff must
demonstrate "a substantial risk of serious harm."  *Id*.   Here, the court assumes for
the sake of discussion that the risk of Covid-19 satisfies this requirement.  *See Swain
v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) (finding, in June 2020—before
widespread vaccine availability—that the risk of Covid-19 in a pre-trial detention
center constitutes a substantial risk of serious harm).    Under the subjective
component, the plaintiff must prove "the defendants' deliberate indifference" to that
risk of harm by making three sub-showings: "(1) subjective knowledge of a risk of

---

[1] "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth
or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific
provision, not under the rubric of substantive due process."  *United States v. Lanier*, 520 U.S. 259,
272 n.7 (1997).

[2] The "Fifth Amendment . . . applies to only federal, not state actors."  *Pittman v. State Farm Fire
& Cas. Co.*, 662 F. App'x 873, 882 (11th Cir. 2016).  Thus, because Plaintiff seeks relief against
all state actors, Plaintiff cannot proceed under the Fifth Amendment.

serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Lane*, 835 F.3d at 1308 (internal quotation marks omitted).

As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. *Swain*, 961 F.3d at 1285. A plaintiff must prove that the defendant acted with "a sufficiently culpable state of mind." *Id*. (quoting Farmer, 511 U.S. at 834). Ordinary malpractice or simple negligence will not do; instead, the plaintiff must show "subjective recklessness as used in the criminal law." *Id*. at 1286 (quoting *Farmer*, 511 U.S. at 839-40). Indeed, even where "prison officials . . . actually knew of a substantial risk to inmate health or safety," they may nonetheless "be found free from liability if they responded reasonably to the risk"— "even if the harm ultimately was not averted." *Id*. (quoting *Farmer*, 511 U.S. at 844). This is so because "[a] prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id*. (quoting *Farmer*, 511 U.S. at 844-45); *see also Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) ("It is well settled that prison officials must take reasonable measures to guarantee the safety of the inmates . . . ." (internal quotation marks omitted).

### A.    Plaintiff Has Not Stated a Claim Against The ECBCC.

As this Court previously instructed Plaintiff, a civil rights plaintiff suing a municipal entity, such as the ECBCC, under § 1983 must show that (1) "his constitutional rights were violated"; (2) the county "had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Thus, Plaintiff must identify a particular municipal "policy" or "custom" that caused the constitutional injury. *Board of County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 (1978).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Wayne v. Jarvis,* 197 F.3d 1098, 1105 (11th Cir. 1999) (*quoting Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489 (11th Cir. 1997)); *see also Griffin v. City of Opa–Locka,* 261 F.3d 1295, 1307 (11th Cir. 2001). To establish a county policy, a plaintiff may identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Glech v. Clayton Cnty.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (*citing Monell*, 436 U.S. at 690-91, 694; *Brown v.*

*Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)).

With respect to the latter option, a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" toward the misconduct. *Griffin, supra* (*citing Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs must show the county has a custom or practice of permitting certain actions and the county's custom or practice is the moving force behind the constitutional violation. *Glech*, 335 F.3d at 1330 (internal quotations omitted); *Holmes v. Kucynda*, 361 F.3d 1069, 1078 (11th Cir. 2003).

Here, Plaintiff alleges the ECBCC failed to follow "guidelines established by the CDC regarding rules of 'quarantine'" by placing Plaintiff "in cell [a] with an inmate by the name of Mr. John Tubb who was in quarantine for COVID-19." ECF Doc. 9 at ¶4. Plaintiff alleges the ECBCC's failure to implement CDC quarantine practices is "settled and permanent that it takes on the force of law." However, Plaintiff's allegations are nothing more than a parroting of the definition of a custom.

In other words, just because Plaintiff wants something to be a custom, does not make it so. *Ashcroft*, 556 U.S. at 678 ("A pleading that offers labels and

conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks omitted)).  To the contrary, as with Plaintiff's initial complaint, Plaintiff's amended complaint fails to allege any facts from which the Court can reasonably infer the existence of a custom or policy by the ECBCC which violated Plaintiff's Fourteenth Amendment rights.

First, Plaintiff has not identified any repeated acts or widespread practice of ignoring the CDC guidelines.  Instead, Plaintiff identifies two incidents in which he was placed in a cell with inmate Tubbs.  It is well established, however, that "[n]ormally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *Prieto v. Metro. Dade Cty.*, 718 F. Supp. 934, 938-39 (S.D. Fla. 1989) ("[T]hese four isolated incidents involving only [the plaintiff] fall well short of proving a persistent and widespread practice sufficient to establish a policy or custom.")*; see also*, *McDowell v. Brown*, 392 F.3d 1283, 1290-1291 (11th Cir. 2004), ("[w]hile McDowell's case is tragic, he cannot point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition.  Simply put, this isolated incident, however unfortunate, does not demonstrate evidence of the County's 'persistent' or 'widespread' policy.").

Second, Plaintiff's allegations show that the Jail had some COVID-19 policies in place.  For example, Plaintiff admits when he was removed from the cell with

Tubbs, nurses informed Plaintiff that they did not know why he was placed in that cell, but now that he was exposed to COVID-19, he was going to have to stay in quarantine. ECF Doc. 9 at ¶7. Also, when Plaintiff and Tubbs were separated, they were each placed in their own "negative pressure cell, used for or to treat those with respiratory infections." *Id*. at ¶6. While the fact that the Jail did not follow such quarantining protocol on two isolated incidents may be negligent, it falls well short of showing the absence of any COVID protocols.

Regardless, even if Plaintiff had alleged facts sufficient to show the ECBCC had a custom or policy not to follow the CDC guidelines, such a custom or policy would not rise to the level a constitutional violation. Indeed, several courts have recognized that it is not feasible to expect prisons to adhere to the CDC guidelines and failure to enact the CDC guidelines does not violate the Eighth Amendment. As the Fifth Circuit recently stated, "The Eighth Amendment does not enact the CDC guidelines. Nor does it require TDCJ to implement long-term changes or avoid the spread of COVID-19, and the failure to do so does not clearly evince a wanton disregard for any serious medical needs". *See Valentine v. Collier*, 978 F.3d 154, 164 (5th Cir. 2020) (citations omitted)). Similarly, according to the Seventh Circuit, "The CDC Guidelines—like other administrative guidance—do not themselves set a constitutional standard. . . . [T]hey simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question."

*Mays v. Dart*, 974 F.3d 810, 823 (7th Cir. 2020) (quotation marks omitted)); *see also, Young v. Ledet*, 2021 WL 799683, at *17 (E.D. La. Jan. 15, 2021), adopted, 2021 WL 795981 (E.D. La. Mar. 2, 2021) ("the constitution does not require prison officials to adopt the CDC guidelines and implement those guidance to satisfy their duty to provide for inmate safety and care within prisons"). Thus, Plaintiff's claim that the ECBCC failed to follow CDC guidelines does not rise to the level of a constitutional violation.

The undersigned, therefore, finds that Plaintiff has failed to state a claim against the ECBCC. *See Hall v. Kenney*, 2020 WL 5407860, at *2 (E.D. Penn. Sept. 9, 2020) (dismissing municipal jail inmate's claims about being housed for a short time in an intake pod and exposed to coronavirus against municipal officials in an official capacity as "not [alleging] a municipal custom or policy to violate the rights of pretrial detainees."); *Witherspoon v. Waybourn*, 2021 WL 1056514 (N.D. Tex. Mar. 19, 2021) ("Witherspoon's allegation that he was housed with inmates who may have been exposed to COVID-19 does not allege a municipal custom or policy to violate the rights of pretrial detainees.").

## B.    Plaintiff Has Not Stated a Claim Against Defendant Powell.

As stated above, Plaintiff sues Defendant Powell in his official and individual capacities. Specifically, Plaintiff claims Defendant Powell, "who is ultimately responsible for the administration of the jail," failed to implement CDC guidelines

in the Jail "that will protect the health and constitutional rights of all."  ECF Doc. 9 at ¶4.  These claims also fail as a matter of law.

First, a claim against Defendant Powell in his official capacity is essentially one against the employing agency - the ECBCC, which as stated above, fails as a matter of law.  *See Farred v. Hicks*, 915 F.2d 1530 (11th Cir. 1990).  Second, to the extent Plaintiff seeks to hold Defendant Powell liable for not implementing CDC guidelines, even assuming that responsibility fell on Powell, as discussed above, not implementing CDC guidelines does not rise to the level of a constitutional violation.

Third, to the extent Plaintiff seeks to hold Defendant Powell liable because he is a supervisor, it is well settled that supervisory liability under § 1983 "must be based on something more than the theory of respondeat superior."  *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 801 (11th Cir. 1998).  Rather, a supervisor may only be liable if (1) he personally participates in the alleged constitutional violation *or* (2) there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.  *Id.* (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).  A causal connection can be established either when (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do

so[3] or (2) the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." *Id.* (citations omitted). As discussed in subsection A, above, Plaintiff has not set forth facts sufficient to show either a custom or policy or widespread abuse.

Plaintiff has also not alleged any facts to show that Defendant Powell personally participated in any wrongful conduct. There are no allegations, for example, that Defendant Powell knew Plaintiff had been placed in a cell with inmate Tubbs or that Defendant Powell knew that Tubbs had tested positive for COVID-19. Although Plaintiff alleges he "informed staff and medical personnel," who refused to act, he does not identify those persons as Defendant Powell. Similarly, Plaintiff does not allege that Powell was the one who forced him to be confined with Tubbs or was the person who returned Tubbs to Plaintiff's cell. Instead, contrary to Federal Rule of Civil Procedure 8, Plaintiff simply lumps all defendants together in the amended complaint. *See West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x. 81, 86 (11th Cir. 2008) (noting that in a case with multiple defendants, plaintiff should avoid "lumping" multiple defendants together because doing so makes it difficult to "ascertain exactly what the plaintiff is

---

[3] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown,* 906 F.2d at 671.

claiming"). Thus, the undersigned finds Plaintiff's claims against Defendant Powell in his individual and official capacities should be dismissed.

### C. Plaintiff Has Not Stated a Claim Against Nurse Burgess.

Finally, Plaintiff fails to state a claim of deliberate indifference against Nurse Burgess in either her individual or official capacities.[4]  Plaintiff alleges Nurse Burgess took him back to population after only six (6) days of quarantine and did not give him a COVID-19 test even though he was "weak, off balance, and not feeling well at all." ECF Doc. 9 at ¶9. According to Plaintiff, Nurse Burgess' decision "violated his [rights] as well as staff and inmates [he] would come in contact with." *Id*. Plaintiff further alleges, Nurse Burgess' actions of putting him back into population constituted "deliberate disregard of safety for others" and the CDC guidelines requiring fourteen (14) days of quarantine and her medical education— an "act that far exceeds negligence and evidence a reckless state of mind." *Id*.

As stated above, to state a claim for deliberate indifference, Plaintiff must set forth facts sufficient to meet an objective and subjective component. For purposes of this report, the Court assumes COVID-19 satisfies the objective requirement –

---

[4] Plaintiff's official capacity claim against Burgess fails for the same reason as his official capacity claim against Powell. Namely, such a claim is against the agency that employed Burgess, and whether that is the ECBCC or a third party medical provider, Plaintiff has not alleged any facts showing that the employer had a custom or policy that was the motivating force behind any constitutional violation.

that is that it is a serious medical need.  Plaintiff, however, has not set forth facts sufficient to show that Nurse Burgess acted with deliberately indifference.

To the extent Plaintiff takes issue with Burgess taking him back to the general population, Plaintiff does not have standing to assert claims on behalf of other inmates.  *See Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019).  Indeed, even if he had standing, Plaintiff does not allege he contracted COVID-19 and, thus, has alleged no facts suggesting it was necessary for Plaintiff to be quarantined.

Similarly, to the extent Plaintiff bases his deliberate indifference claim on Nurse Burgess's failure to provide him a COVID test, that claim fails because there are no allegations showing that Nurse Burgess knew Plaintiff had been exposed to COVID-19.  In other words, as with Powell, there are no allegations that Nurse Burgess knew Tubbs had tested positive for COVID-19.  In fact, Although Plaintiff alleges he told Nurse Burgess he was "weak, off balance, and not feeling well," Plaintiff had just arrived at the Jail from medical infirmary after being treated for a head trauma.  Thus, those symptoms could have as easily been associated with Plaintiff's injuries, rather than COVID-19.  Moreover, Plaintiff has not alleged any facts to show that Nurse Burgess acted with a culpable state of mind when she refused to give him a COVID test.  For example, there are no allegations that such tests were even available.

At best, all Plaintiff has alleged is that he was placed in a cell with inmate Tubbs for two days and then again for three days.  He does not identify who placed him with Tubbs either time or who knew Tubbs was COVID-19 positive.  He does not allege to whom he complained, and there are no allegations Tubbs showed any symptoms or how long Tubbs had COVID-19.

Simply put, Plaintiff's scant allegations, even accepted as true, are insufficient to state a claim for deliberate indifference against any of the Defendants, including Burgess.  *See Swain*, 961 F.3d at 1285; s*ee Welch v. Cty. of Burlington*, 2021 WL 3418680 (D.N.J. Aug. 5, 2021) (dismissing plaintiff's claims in regard to social distancing and COVID-19 testing finding that plaintiff must allege additional facts concerning "how the conditions are excessive in light of any justification for the restrictions to reduce the spread of COVID-19" and "whether other space was available to house inmates and whether the jail had access to COVID-19 tests but refused to test inmates.") (citing *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020), citing in turn *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979)).

## V.    CONCLUSION

It is respectfully RECOMMENDED:

1.    Plaintiff's amended complaint (ECF Doc. 9) be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A for failure to state a claim.

2.      The clerk be directed to close the file.

Done in Pensacola, Florida, this 25th day of February, 2022.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.